# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Tryone R. Williams, | |
|     Plaintiff, | No. 20 C 5639 |
| v. | Judge Martha M. Pacold |
| Thomas Dart, et al., | |
|     Defendants. | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6), OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT PURSURANT TO F.R.C.P. 12(e)

NOW COME the Defendants, Thomas Dart, Sheriff of Cook County, and Director Amanda Gallegos ("Defendants") by their attorney KIMBERLY M. FOXX, State's Attorney of Cook County, through her Assistant State's Attorney, JORIE R. JOHNSON, who move to dismiss all of Plaintiff's claims with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, and in support, state:

## INTRODUCTION

Tyrone R. Williams ("Plaintiff"), a detainee at Cook County Jail ("CCJ"), brings one claim against Defendants Sheriff Dart and Director Gallegos in their official capacities, but exactly what claim is decidedly unclear. Plaintiff claims he was exposed to unconstitutional conditions of confinement due to Defendants' allegedly inadequate response to the novel coronavirus ("COVID-19"). Plaintiff also claims that he had other medical conditions that were known to Defendants, and he ended up contracting COVID-19.

Plaintiff's allegations about COVID-19 fail. Plaintiff must allege that Defendants' response to COVID-19 was objectively unreasonable in light of the totality of the facts and circumstances, and not merely that he ended up getting sick. Plaintiff may wish Defendants did more, but that is not enough to suggest a constitutional violation. Defendants made good faith efforts to respond to an unprecedented global pandemic while balancing the legitimate interests in managing the Jail's facilities and preserving institutional security.

In the alternative, Plaintiff failed to adequately plead his allegations because there are no definitive dates given in his complaint, nor is there enough information to give reasonable notice of exactly what the claim is and the basis for it. As the Court is no doubt well aware, guidance regarding appropriate protective measures have been repeatedly changing during the course of the COVID-19 pandemic as authorities learn more about the virus and develop new strategies in response. Reasonable one day may well be unreasonable a few days later, and visa-versa. Plaintiff has fallen short of his burden to plead a valid claim for relief because his failure to indicate the relevant time period has deprived the Defendants of the opportunity to begin developing a defense, and has also deprived the Court of standard by which to gauge reasonableness.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), a court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). First, to survive a Rule 12(b)(6) motion to dismiss, the claim must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true; "if they do not, the plaintiff pleads itself

out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The pleading standard in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Additionally, Rule 12(e) provides that any "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The purpose of Rule 12(e) is to provide defendants with an opportunity to dispel confusion and receive adequate notice of the plaintiff's claims so that an intelligible response can be filed. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). In general, motions for a more definite statement under Rule 12(e) are appropriate when a "pleading fails to specify the allegations in a manner that provides sufficient notice." *Id.* at 513-14. "Rule 12(e) and related caselaw make it 'plain that the rule is designed to strike at unintelligibility rather than want of detail.'" *Flentye v. Kathrein*, 485 F.Supp.2d 903, 911 (N.D. Ill. 2007); *see also Direct Commc'ns, Inc. v. Horizon Retail Const., Inc.*, 387 F.Supp.2d 828, 831 (N.D. Ill. 2005) (Rule 12(e) motion is intended to eliminate confusion, not replace discovery). Deciding a motion for a more definite statement is in the discretion of the district court. *See Criddell v. Trans Union LLC*, 2010 U.S. Dist. LEXIS 41094, at *6 (N.D. Ill. Apr. 27, 2010).

**STATEMENT OF FACTS**

Plaintiff alleges the following facts, assumed to be true for the purposes of this Motion to Dismiss only. (Pl.'s *Amended Compl.,* Dkt. No. 8, at pg. 4.) Plaintiff Tyrone R. Williams alleges that,

while housed in Division 6 tier 2D at CCJ, he contracted the novel coronavirus ("COVID-19"). (*Id.*) Plaintiff alleges that he was not given enough space to social distance during the time of the outbreak. (*Id.*) Plaintiff claims that he needed cleaning supplies all the time, which were hard to get, as well as hand soap to wash his hands. (*Id.*) Plaintiff also claims he was never able to be in a single-man cell during the outbreak. (*Id.*) Plaintiff alleges that he has other medical conditions and did not have COVID-19 when he first arrived to CCJ. (*Id.*)

## ARGUMENT

I. **Plaintiff's Conditions of Confinement Claim Fails.**

It is well-settled, and Judge Kennelly recognized in *Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) (Appeal from the United States District Court for the Northern District of Illinois. *Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) (Appeal from the United States District Court for the Northern District of Illinois Case *Mays, et al., v. Dart*, No. 20-cv-2134), that once prison officials know about a serious risk of harm, they are only required to take reasonable measures to abate it, and "[o]f course, an official's response may be reasonable even if it fails to avert the harm." *Dale*, 548 F.3d at 569, *citing Borellow v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006); *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007). Moreover, courts "must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997).

Following *Kingsley v. Hedrickson*, 135 S. Ct. 2466 (2015), *Miranda v. Cty. Of Lake*, 900 F.3d 335 (7th Cir. 2018), and *Hardeman v. Curran* 933 F.3d 816 (7th Cir. 2019), objective unreasonableness governs a pretrial detainee's Fourteenth Amendment conditions of confinement claim. *See also McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018). A Plaintiff must allege that: (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly;" and (2) the defendant's conduct was objectively unreasonable. *Miranda*, 900 F.3d at 353-54. Whether the defendant's conduct was objectively unreasonable "turns on the facts and circumstances of each particular case." *Kingsley*

4

*v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (internal quotation marks omitted). In assessing reasonableness, courts are to consider the "legitimate interest in managing the Jail facilities" while "defer[ing] to policies and practices that 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Mays v. Dart*, 20-cv-2134, Dkt. 73 at p. 58, quoting *Kingsley*, 135 S. Ct. at 2473. A pretrial detainee cannot prevail by showing that the defendant was merely negligent. *McCann*, 909 F. 3d at 887. In further explanation of this new objective standard, the Supreme Court stated:

> the use of an objective standard adequately protects an officer who acts in *good faith*. We recognize that "running a prison is an inordinately difficult undertaking," and that "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." Officers facing disturbances "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." For these reasons, we have stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer. We have also explained that a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate.

*Kingsley*, 135 S. Ct. at 2474 (citations omitted, emphasis added).

The Court can take judicial notice of the fact that COVID-19 is still a new virus, creating a global pandemic the entire world is struggling to manage in a consistent, effective way, and that the recommendations of health experts and governmental officials have been at times indefinite, contradictory, and even counterproductive.[1] As will be discussed in more detail in Section II, below, Plaintiff's Complaint pleads no specific date for when he became sick, and merely states that he

---

[1] In March 2020, U.S. health officials told the general public not to wear face masks to prevent coronavirus. https://www.marketwatch.com/story/the-cdc-says-americans-dont-have-to-wear-facemasks-because-of-coronavirus-2020-01-30. On July 6, 2020, 239 experts urged the CDC and WHO to recognize that COVID-19 could be airborne, something those organizations had not done yet. https://www.usatoday.com/story/news/health/2020/07/06/COVID-19-coronavirus-spreads-airborne-transmission-experts-say/5383598002/. Some brands of hand sanitizer have been recalled due to toxic health risks. https://www.usatoday.com/story/money/2020/07/06/methanol-hand-sanitizer-recalls-fda-wood-alcohol-toxic/5386231002/. While vaccines were originally touted as only requiring one or two shots, depending on type of vaccine, on September 24, 2021, the CDC endorsed its Advisory Committee on Immunization Practices, who recommended that a booster would be needed in order to stay safe against the virus. https://www.cdc.gov/media/releases/2021/p0924-booster-recommendations-.html

contracted COVID-19 while being housed in CCJ. (Dkt. 8 at pg. 4). The Court can take judicial notice of other dates and facts established in other proceedings. *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-1082 (7th Cir. 1997).

The first detainees at CCJ tested positive for COVID-19 on March 23, 2020. https://www.nytimes.com/2020/04/08/us/coronavirus-cook-county-jail-chicago.html (*last visited* July 1, 2020.) The same day, the presiding Judge of the Circuit Court of Cook County, Criminal Division, entered an Expedited Bond Hearing Scheduling Order designed to "limit the risk of jail detainees being exposed to the COVID-19 virus, yet balance the rights of the accused and public safety; [and t]o give the Cook County Sheriff the enhanced ability to exercise social distancing in the jail. *Mays, et al., v. Dart*, 20-cv-2134, (Dkt. 31-1, Exhibit 1, pg. 1, 12.) Between March 9, 2020, and April 9, 2020, the jail population declined by 1,175 detainees, bringing it to a record low. *Mays, et al., v. Dart*, 20-cv-2134 (Dkt. 47 at pg. 13.) Despite concerns about COVID-19, no judge determined plaintiff could be released from CCJ during that time.

Not until April 9, 2020 did Judge Kennelly enter a temporary restraining order in *Mays, et al., v. Dart*, 20-cv-2134, (Dkt. 47.), addressing COVID-19 abatement efforts at CCJ. That order was "considerably narrower than the order the plaintiffs have requested", and "the Court declined the plaintiffs' request to require the Sheriff to move certain of them to other forms of custodial arrangements such as home incarceration."(*Id.* at pg. 3.) Specifically, the *Mays* plaintiffs sought a TRO requiring social distancing, provision of supplies for sanitation and handwashing, distribution of personal protective equipment, quarantining of coronavirus positive detainees, and relocation of certain class members. (*Id.* at pg. 5-6.) The *Mays* court recognized that the Sheriff promulgated policies and procedures intended to implement CDC Guidelines. (*Id.* at pg. 21.) Turning to the plaintiffs' specific contentions, as to social distancing, while the *Mays* court found the Sheriff might be unreasonable with regard to intake of new detainees, the Court did not find the Sheriff was acting in an objectively unreasonable manner with regards to social distancing of existing detainees, like Plaintiff in the case

at bar. (*Id.* at pg. 23-25.), holding that CDC's guidance is not definitive on existing housing arrangements, and "expressly recognize[ing] that complete social distancing may not be possible in the sleeping areas of the jail".) The *Mays* court ordered increased provision of soap and sanitation of frequently touched surfaces to begin on April 10, 2020, but declined to impose additional requirements.[2] (*Id.* at p. 35-36.) As to personal protective equipment, the court only ordered the provision of facemasks to detainees in quarantine, and <u>not</u> to all detainees. (*Id.* at p. 36.) The *Mays* court found no evidence of medical understaffing, nor did it find a need to segregate "medically vulnerable detainees", just like the Plaintiff in this matter claims he had unspecified underlying medical conditions . (*Id.* at p. 36.)

On April 27, 2020, Judge Kennelly converted many aspects of the TRO into a preliminary injunction, but still declined to require more in several crucial areas. *Mays,* 20-cv-2134 (Dkt. 73 at pg. 1-3, 10-11.) Part of why Judge Kennelly declined to go any further was because Defendants demonstrated robust efforts to curb the spread COVID-19 at CCJ. (*Id.* at p. 14, 19-23, 54-68.) Indeed, Judge Kennelly stated that "It cannot reasonably be disputed that the Sheriff has undertaken a significant, and impressive, effort to safeguard detained persons in his custody from infection by coronavirus. And . . . the Court is satisfied that the Sheriff and his staff have acted in *good faith*, with the goal of protecting the people placed in his custody, consistent with his obligation to maintain security." (*Id.* at p. 56, emphasis added.) Further, the *Mays* court rejected the notion that the Sheriff needed to eliminate all risks, and rejected the notion that any form of group housing was impermissible because that "would be tantamount to saying that, in the present circumstances, the Constitution prohibits detaining people in jails." (*Id.* at 65-66.) In short, while the *Mays* court granted a limited TRO, it found that the Defendants had already taken significant steps and were complying with CDC

---

[2] As of August 28, 2020, the CDC advised that touching contaminated surfaces or objects "is not thought to be the main way the virus spreads". https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-COVID-spreads.html

guidance on a number of fronts, including key areas Plaintiff complains about in the case at bar.

Considering the Defendant's response to the novel coronavirus even when looking further into the year, the criteria and standards changed for addressing the virus throughout the pandemic. The CDC, WHO (World Health Organization), The State of Illinois, and CDPH (Chicago Department of Public Health) all advised a multitude of different guidelines that changed frequently. The Defendants handled the fluctuations of the weekly if not daily changing guidelines by frequently adapting their plans of action. For example, on November 16th, 2020, CCJ even suspended in person visitation to help avert the spread of COVID-19. https://wgntv.com/news/coronavirus/cook-county-jail-suspends-all-visitations-due-to-coronavirus-concerns/ (*last visited* October 25, 2021.)

The Defendants took a more assertive approach to COVID-19 prevention and remediation than many local, state, national, and international governments, businesses, and non-governmental organizations. Far from being objectively unreasonable, the Defendants were taking measures another court in this District found went above and beyond CDC guidelines, all while carrying out the essential function of holding dangerous individuals who judges determined could not be released. *Mays,* 20-cv-2134 Dkt. 73 at p. 34-35. Plaintiff may have become sick while being detained, but constitutional claims are not strict liability. Defendants can still have acted in an objectively reasonable manner even if Plaintiff contracted COVID-19 because a jail official may be free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

As a matter of law, Plaintiff has failed to allege that Defendants acted in an objectively unreasonable manner in the face of a known risk. Just the opposite, a court in this district has already found that Defendants acted aggressively and in good faith to prevent the spread of COVID-19 as much as possible, all while remaining cognizant of their obligations to house potentially dangerous pre-trial detainees. Plaintiff's conditions of confinement claim fails as a matter of law, and Plaintiff's suit should be dismissed with prejudice.

**II.	Plaintiff Has Failed to Plead Sufficient Factual allegations to Ascribe Liability on Defendants' Sheriff Dart and Director Gallegos in their Official Capacities or Individual Capacities.**

As an initial matter, official capacity suits against government officials, such as Director Gallegos, are tantamount to claims against the government entity itself – here, the Cook County Sheriff, i.e. Sheriff Dart. *See Guzman v. Sheahan*, 495 F. 3d 852, 859 (7th Cir. 2007). Plaintiff cannot bring an official capacity claim against Director Gallegos because she is not final policymaker for the Cook County Sheriff. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84 (1986) (municipal policies can only be formulated by the official charged under state law with the authority and responsibility for acting as a final policymaker); *see also Thomas v. Cook County Sheriff's Dept.,* 604 F. 3d 293, 303 (7th Cir. 2010). Thus, to the extent Plaintiff has brought an official capacity suit against Director Gallegos, that is really a claim against Sheriff Dart in his official capacity, which Plaintiff has already pled. Plaintiff has failed to state a claim against Director Gallegos in her individual capacity, and the claim against Director Gallegos in her official capacity is redundant and unnecessary. Director Gallegos should be dismissed from this action.

As to Sheriff Dart, however, Sheriff Dart cannot be held liable in a Section 1983 lawsuit unless the Plaintiff shows that his constitutional rights were violated as the result of an official custom, policy, or practice of that entity. *See Monell v. Dept. of Social Svcs. of the City of New York*, 436 U.S. 658, 691 (1978). Unconstitutional policies, practices, or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by law or policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a constitutional injury that was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F. 3d 1000, 1013 (7th Cir. 2000). In other words, a plaintiff must demonstrate that the municipal entity was the moving force behind the alleged injury. *See County Comm'r of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

Additionally, to impute knowledge to policymakers of a widespread practice, plaintiff must

show a pattern of constitutional violations. *See Grieveson v. Anderson*, 538 F. 3d 763, 774 (7th Cir. 2008) (four incidents affecting the plaintiff insufficient to show a widespread practice); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (three incidents of improper pepper-spraying insufficient to show a widespread practice); *Jackson v. Marion* County, 66 F.3d 151, 152 (7th Cir. 1995). A plaintiff can succeed under a "single-incident" theory of liability only if the constitutional violation was a "highly predictable consequence" of an adopted policy. *See Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011). Here, Plaintiff does not allege that a widespread policy or practice of the Cook County Sheriff violated his constitutional rights. (*See* Dkt. 8.) Further, nowhere in the Amended Complaint are prior instances of similar misconduct alleged. Thus, Plaintiff is required to show that his constitutional injuries were caused by a person with final policy-making authority. *Brokaw*, 235 F. 3d at 1013. But Plaintiff fails to state a claim against Sheriff Dart as he has stated no express policies implemented by Defendant, any constitutional injury suffered, nor has he alleged a pattern of any constitutional violations since it was well settled in *Mays* that the Sheriff's handling of the COVID-19 outbreak was "significant and impressive". (*Id.* at p. 56) Accordingly, Plaintiff's complaint should be dismissed.

### III. Plaintiff's Bare Bones Complaint Should Be Dismissed Because It Fails to Put The Defendants on Notice of The Claims Alleged And Fails to Pass The "Speculative Level" prong.

Plaintiff's complaint, even when liberally construed, fails to pass either of *Twombly*'s two prongs. First, it does not provide Sheriff Dart and Executive Director Amanda Gallegos with fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Second, the factual allegations in the complaint do not pass the "speculative level" because Plaintiff has failed to plead sufficient factual content that allows the Court to draw the reasonable inference that Defendant Dart and Defendant Gallegos are liable for the alleged misconduct. *Id.*; *Iqbal*, 556 U.S. at 678.

First, the complaint does not provide Sheriff Dart and Director Gallegos with fair notice of Plaintiff's claim or the grounds upon which it rests. FEDERAL RULE OF CIVIL PROCEDURE 8(a)

establishes a notice pleading standard for federal court. The Seventh Circuit has established the ground rules for notice pleading. *Hefferman v. Bass*, 467 F.3d 596, 600 (7th Cir. 2006). "In federal court under Rule 8 the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action'; not legal theories." *Id.*

In this case, the Complaint was filed on the standard form provided to inmates and available on the Northern District of Illinois' website, "Complaint Under the Civil Rights Act 42 U.S.C. § 1983 Against Federal, State, County, or Municipal Defendants (Eastern Division)." (A*vailable at:* www.ilnd.uscourts.gov/home/OnlineForms.aspx). While this form instructs plaintiffs to state "as briefly as possible the facts of your case," it also notes that plaintiffs should "Use as much space as you need" and "Attach extra sheets if necessary." (*Amended Compl.* Dkt. 8 at pg. 4.) Moreover, the instructions stress that a plaintiff should "Describe how each defendant is involved, including names, <u>*dates*</u>, and places." (*Id.*) (emphasis added).

Plaintiff's complaint, however, fails to provide a date when he allegedly contracted COVID-19. The complaint only alleges Plaintiff contracted COVID-19 "during this outbreak." (Dkt. 8 pg. 4.) Plaintiff states that he was housed in Division 6 Tier 2D, but again fails to provide the dates when he was housed there. (*Id.*) Plaintiff's lack of a clear timeline fails to put Defendants on notice because the pandemic started more than a year-and-a-half ago and continues to persist. Plaintiff has failed to put the Defendants on notice regarding the potential day, week, month, or even year when he contracted COVID-19 and lived in Division 6. Both the date(s) of his housing in Division 6 and when he contracted COVID-19 should be known to the Plaintiff without the need for discovery, but they are missing from the complaint. Plaintiff has been incarcerated, released, and reincarcerated during this current COVID-19 pandemic outbreak. Plaintiff was placed in Division 6 housing both times of incarceration at CJJ during the current outbreak; without a suggestion of what time period Plaintiff is referring to of when he was housed in Division 6 or when he contracted COVID-19, the complaint is nothing more than the proverbial unadorned the-defendant-unlawfully-harmed-me accusation.

Such an unadorned complaint is prejudicial to the defendant because "[t]he purpose behind notice pleading is simply to provide a defendant with enough information to prepare a defense." *Sabratek Liquidating Inc., v. KPMG LLP*, 2002 U.S. Dist. LEXIS 7483 at *5 (N.D. Ill. April 26, 2002) (*citing Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)). *See also, Wade v. Hopper,* 993 F.2d 1246, 1249 (7th Cir. 1993). The Defendants are unable to prepare a defense based on the complaint's less than bare bones allegations. Without knowing approximately when Plaintiff allegedly contracted COVID-19 and lived in Division 6, Sheriff Dart and Director Gallegos are unable to assemble witnesses, documents, medical records, video footage, or other materials that may be essential in answering Plaintiff's complaint, offering affirmative defenses, disproving Plaintiff's claims, or aiding in any of Defendants' other potential defenses or legal strategies.

Further prejudicing the Defendants, it is unclear, from the four corners of the complaint, whether Plaintiff is alleging a medical claim or a conditions claim. That is, is Plaintiff alleging he was housed in unsanitary conditions that caused him to become infected with COVID-19, or is Plaintiff alleging that he did not receive proper medical care and treatment for diagnosis? It is well settled that medical care at CCJ is not provided by the Sheriff, but by Cook County. (*See Harrison v. County of Cook,* 2011 U.S. Dist. LEXIS 102492 at *21-22 (N.D. Ill. 2011). "Cook County, through Cermak, is responsible for providing medical care to detainees. Dart's office, by contrast, is responsible for operating and maintaining the CCDOC as a jail.") Depending on what kind of claim Plaintiff is pursing, he may well be suing the wrong Defendants. Even if Plaintiff named the right Defendants, bringing one claim or the other would lead down different avenues in discovery as different documents and witnesses would be responsive to the different clams, but Plaintiff has failed to put Defendants on notice of the claim or given them enough information to begin to assemble a defense. Plaintiff, thus, failed to provide the Defendants with fair notice and has not satisfied *Twombly's* first prong. *Twombly*, 550 U.S. at 555.

Second, because the complaint is so bare bones, the factual allegations contained therein do not pass the speculative level to cross over into the realm of plausibility. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is *liable* for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Without a clear timeline, no reasonable inference can be drawn between the alleged misconduct and the Defendants' liability. Plaintiff even states in his complaint that he only makes claims against the Defendants because he believes they "are the people in control of the jail", which is not sufficiently pled to allow the Court to draw the reasonable inference that Defendant Dart and Defendant Gallegos are liable for the alleged misconduct. (Dkt. 8 pg. 4). Indeed, as stated, medical care at the Jail is not provided by the Sheriff's Office and Defendant Gallegos is an inappropriate Defendant for an official capacity claim, so depending on exactly what claim Plaintiff is bringing, it very well may be that the Defendants are not "the people in control of the jail" for that issue. Moreover, the Defendants were taking measures above and beyond CDC guidelines, all while carrying out the essential function of holding dangerous individuals who judges determined could not be released. *Mays,* 20-cv-2134 (Dkt. 73 at p. 34-35.) By not providing any dates as to when he allegedly contracted COVID-19 or when he was housed in Division 6, Plaintiff has failed to plausibly allege that Sheriff Dart and Director Gallegos may be liable for the alleged misconduct. It is again worth noting that guidance and guidelines have been changing rapidly during the course of the COVID-19 pandemic, and CCJ's response has similarly adapted and evolved. By not providing a date or even a date range for when Plaintiff contracted COVID-19, Plaintiff has failed to let Defendants or even the Court begin to get a grasp of what the operative "rules of the road" were regarding COVID-19 at the time Plaintiff allegedly was injured.

Therefore, Plaintiff's complaint does not meet the pleading standard set forth in Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has failed to provide Sheriff Dart and Director Gallegos with fair notice of the subject of his complaint and has failed to suggest that he is plausibly entitled to relief. Sheriff Dart and Director Gallegos are prejudiced by these failures, not only

through the general burden of litigation, but by the additional difficulties of preparing an answer and defense to non-specific allegations. Thus, Plaintiff's complaint should be dismissed.

IV. **The Court Should Dismiss Plaintiff's Complaint But, In the Alternative, Require Plaintiff Plead With A More Definite Statement So That Defendants Can Properly Respond to This Cause of Action.**

Under the Federal Rule of Civil Procedure 12(e) – *Motion for a more Definite Statement*, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." . Rule 12(e) "is designed to strike at unintelligibility rather than want of detail," *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 911 (N.D. Ill. 2007) (internal quotations omitted), and is intended to eliminate confusion, not replace discovery, *Direct Commc'ns, Inc. v. Horizon Retail Const., Inc.*, 387 F. Supp. 2d 828, 831 (N.D. Ill. 2005).

In the case at bar, as has been previously stated, Plaintiff's complaint is unclear on many pertinent facts needed for the opposing party to reasonably prepare a response. The most critical omission relates to Plaintiff's vague assertion that all claims in his complaint arose during "the Outbreak." (Dkt 8 pg. 4). This vague assertion of timing provides Defendants no way to understand what they should be responding too, as Plaintiff has been booked into Cook County jail several times during the "pandemic outbreak" timeline from 2019 through 2020. Defendants are not sure which booking Plaintiff is referencing, which makes it problematic to answer the complaint in good faith. Secondly, Plaintiff speaks about his medical diagnosis and then about certain conditions, but Plaintiff is unclear as to whether his complaint is with the medical care he received or the conditions in which he was housed. Plaintiff's complaint is, "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Land O'Lakes Purina Feed, LLC v. WelkCo, LLC*, No. CIV-10-981-GPM, 2011 U.S. Dist. LEXIS 41659, 2011 WL 1465632, at *2 (S.D. Ill. Apr. 18, 2011) (internal quotations and citations omitted).

Plaintiff needs to make his timeline and claims clear not to substitute discovery or replace factual details, but so that Defendants are given a practical chance to respond. Defendants do not wish to re-hash prior arguments made but want to reiterate the point that they cannot reasonably provide an appropriate response to any pleading from the Plaintiff without more a definite statement. Defendants' roles during certain times of the outbreak have shifted, and without knowing which booking time Plaintiff is even referencing, good faith answers cannot be provided to the complaint. Plaintiff needs to provide specific dates in this case as it is needed to appropriately answer the complaint and all of Plaintiff's allegations. If Plaintiff's complaint does not merit dismissal, Plaintiff should at least be made to make a more definite statement of his claims.

## CONCLUSION

WHEREFORE, for the above stated reasons, Defendants are entitled to dismissal as a matter of law under Federal Rules of Civil Procedure 12(b)(6), and/or a more definite statement under Federal Rules of Civil Procedure 12(e). Defendants respectfully request that this Honorable Court dismiss with prejudice all claims against Defendants, and/ or Seek to have Plaintiff provide more definite statement in their Complaint within 14 days of granting of your order, and to award costs and fees associated in bringing this motion. Moreover, Defendants request that this Court stay any responsive pleadings in this matter until after the Court rules on this motion, and further stays any discovery.

        Respectfully Submitted,
        Kimberly M. Foxx
        State's Attorney of Cook County

By:    */s/ Jorie R. Johnson*
        Jorie R. Johnson
        Assistant State's Attorney
        Richard J. Daley Center
        50 West Washington, Room 500
        Chicago, IL 60602
        (312) 603-7930

# CERTIFICATE OF SERVICE

I, Jorie R. Johnson hereby certify that on November 16th, 2021 I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois Eastern Division by using the CM/ECF system. I certify that in accordance with Fed. R. Civ. P. and LR 5.5 and the General Order on Electronic Case Filing (ECF), the foregoing was served upon non ECF users via postal mail to Non-ECF users listed below.

To:

Tyrone R. Williams
Cook County - CCJ
2020-0608070
P.O. Box 089002
Chicago, IL 60608
PRO SE

                                                     */s Jorie R. Johnson*
                                                     Jorie R. Johnson